PEOPLE v THOMAS SMITH

1. STATUTES—LEGISLATIVE INTENT.

Legislative intent of a statute is determinable properly by what was at the time of enactment rather than what might appear a half century later.

2. RAPE—EVIDENCE—SUBSEQUENT ACTS—SCHEME—PLAN—SYSTEM—STATUTES.

Trial judge properly received testimony of the prosecutrix that she and the defendant had sexual intercourse on several occasions subsequent to the date on which, according to her testimony the offense charged, statutory rape, took place because the subsequent acts were admissible by statute as tending to prove defendants' "scheme, plan or system on doing an act" (MCLA 750.520, 768.27).

Appeal from Court of Appeals, Division 3, Fitzgerald, P. J., and Quinn and McIntyre, JJ., affirming Kent, Roman J. Snow, J. Submitted June 7, 1972. (No. 5 June Term 1972, Docket No. 53,514.) Decided July 26, 1972.

30 Mich App 34 affirmed.

Thomas Francis Smith was convicted of statutory rape. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

REFERENCES FOR POINTS IN HEADNOTES

[1] 50 Am Jur, Statutes §§ 223, 224
[2] 44 Am Jur, Rape § 93.

*State Appellate Defender Office* (by *Richard S. McMillin,* Assistant Defender), for defendant on appeal.

BLACK, J. In this prosecution for statutory rape the only question that was raised, saved and is now properly before us is whether the trial judge erred in receiving testimony of the prosecutrix that she and the defendant had sexual intercourse on several occasions subsequent to the date on which, according to her testimony, the offense charged took place.

*People v Gengels,* 218 Mich 632 (1922) and *People v Trzil,* 235 Mich 469, 473 (1926), the latter expressly following *Gengels,* tell us *(Gengels* at 641):

"In cases involving statutory rape, a qualified exception to the general rule only permits proof of intercourse between the prosecutrix and accused for the purpose of showing opportunity, disposition of the parties and intimate relations tending to break down self-respect and modesty. *People v Abbott,* 97 Mich. 484 (37 Am St Rep 360) [1893]; *People v Williams,* 133 Cal. 168 (65 Pac 323) [1901]; *State v Lancaster,* 10 Idaho, 410 (78 Pac 1081) [1904]; *State v Trusty,* 122 Iowa, 82 (97 NW 989) [1904]."

*Gengels* and *Trzil* were written by Mr. Justice STEERE, each time for a united Court. So was *People v Ayers,* 182 Mich 241 (1914), another unitary decision. *Gengels, Trzil* and *Ayers* were prosecutions for statutory rape. *Ayers* cited and followed *People v Davis,* 175 Mich 594 (1913); a prosecution of male and female for *adultery.* The following quotation, taken from *Ayers,* discloses fairly the primary reason for reversal of the *Ayers* and *Davis* convictions (pp 243–244):

"The following question was asked by the prosecution:

" 'Did he have intercourse with you after you knew you were in the family way?'

"An objection to this was overruled, and she answered 'Yes.' This ruling was error. *People v Davis,* 175 Mich. 594 (141 N.W. 667), and cases there cited."

The apparent if not actual conflict between *Gengels* and *Trzil* on the one hand, and *Ayers* and *Davis* on the other, led to our order granting leave to review the instant defendant's conviction for statutory rape (385 Mich 778).

Conceding that there is room for doubt, not of clarity of the recorded writings of our distinguished predecessors but of the selectively rightful occasions for evidentiary employment thereof, our reports show that trial judges have experienced near to an approximate century of difficulty in determining when and when not the relevant rulings of the Court, starting with *People v Jenness,* 5 Mich 305, 319–325 (1858),[1] should be applied.

Upon reading Justice FELLOWS' opinion of *People v Rice,* 206 Mich 644, 650–658 (1919), one might well have concluded that all such misgivings had been brought to a prosperous conclusion. The opinion was endorsed by the entire Court. In my view the language employed was deliberately

---

[1] Justice CHRISTIANCY commenced his discussion *(Jenness* at 320):

"The general rule in criminal cases is well settled, that the commission of other, though similar offenses, by the defendant, can not be proved for the purpose of showing that he was more likely to have committed the offense for which he is on trial, nor as corroborating the testimony relating to the commission of such principal offense. But the courts in several of the states have shown a disposition to relax the rule in cases where the offense consists of illicit intercourse between the sexes; and it is principally to the American cases that we are to look for authorities upon this subject, as such intercourse is not generally rendered criminal in England, or prosecuted by indictment; being only of ecclesiastical cognizance."

designed to enlarge a known exception to the "well established" general rule; such rule being "that upon trial for felony the prosecution will not be permitted to give evidence tending to establish the guilt of defendant of another distinct and independent crime." (p 650.) Whatever our thoughts in such regard, it is readily perceivable that *People v Rice* was—languagewise and otherwise—the forerunner of that which was enacted as part of the criminal code of 1927, No 175, ch VIII, § 27, p 321 (1929 CL 17320; MCLA 768.27; MSA 28.1050). The section has remained unchanged ever since. It reads:

"Sec. 27. In any criminal case where the defendant's motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of, mistake or accident on his part, or the defendant's scheme, plan or system in doing the act, in question, may be proved, whether they are contemporaneous with or prior or subsequent thereto; notwithstanding that such proof may show or tend to show the commission of another or prior or subsequent crime by the defendant."

Justices of the Court who were "around" when the Code of 1927 was drafted, debated and enacted, not Justices seated 40-odd years later, presumably knew best the legislative purpose of section 27 of chapter VIII.[2] In 1934 they wrote of one mind, regarding what is now § 768.27:

---

[2] We have agreed, unanimously *(Husted v Consumers Power Co,* 376 Mich 41, 54 [1965]):

"Bearing in mind that legislative intent is determinable properly by what was at the time of enactment, rather than what might appear a half century later—by hindsight *(Wayne County Road Commissioners v Wayne County Clerk,* 293 Mich 229, 235 [1940]; *Platt v Union Pacific R. Co,* 99 US 48, 63–64 [25 L Ed 424] [1878]; 50 Am Jur, Statutes, § 236, p 224), we depend much upon what members of the

"The object of the statute above quoted was to make testimony relevant which might otherwise not be so; to broaden the scope of inquiry as to similar transactions; to make relevant evidence of transactions which in the absence of the statute would not be relevant. Ordinarily a witness may not be impeached upon questions relating to a separate and distinct offense at another time and place. A witness may not be impeached upon a collateral issue. *Mills v Warner,* 167 Mich. 619 [1911]. But the purpose and object of the statute above quoted was to do away with the rule as to proof of other offenses and permit the introduction of such testimony even though it might show or tend to show the commission of another prior or subsequent offense by defendant." *(People v Rose,* 268 Mich 529, 535–536 [1934].)

Upon strength of § 768.27 I vote to affirm. The subsequent acts were admissible as tending to prove the defendants' "scheme, plan or system in doing an act" which the testimonial record—if believed by the jury—portrays vividly. It was simply that of arranging a marriage between the male defendant and underage Jacqueline so that the whole family might live better, in defendant Smith's house, in a financial way.

ADAMS, T. E. BRENNAN, SWAINSON, and WILLIAMS, JJ., concurred with BLACK, J.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, J. concurred in the result.

Court wrote at the time of or shortly after enactment of statutory provisions which, considered then as to purpose and intent, have remained unamended in substance (see comment, *Dyer v Sears, Roebuck & Co,* 350 Mich 92, 95 [1957])."